IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BENON JOHN TRAWINSKI and ]
IRENE MONAHAN TRAWINSKI, ]
      ]
    Plaintiffs, ]
      ]
vs. ]    CIVIL ACTION NO. 03-PT-1528-S
      ]
UNITED TECHNOLOGIES CARRIER ]
CORPORATION and COMFORT ]
SYSTEMS, U.S.A. (Owner and Parent ]
Corporation of Standard Heating and ]
Air Conditioning Co.), ]
      ]
    Defendants. ]

## MEMORANDUM OPINION

This case is before the court on the motions to dismiss filed by defendants United Technologies Carrier Corporation ("Carrier") and Comfort Systems, USA ("Comfort"). For the reasons set out herein, the defendants' motions to dismiss are converted into motions for summary judgment, and as such, they are due to be granted and the plaintiffs' claims against the defendants are due to be dismissed with prejudice.

## BACKGROUND

The plaintiffs, who are proceeding *pro se*, filed their complaint against the defendants on June 24, 2003, alleging a cause of action under the Alabama Extended Manufacturer's Liability Doctrine. The plaintiffs filed an amendment to their complaint on October 17, 2003, correcting several typographical errors and adding new averments. The plaintiffs have filed suit against these defendants on four previous occasions.[1]

---

[1] An additional defendant, Weathertech Distributing Co., Inc., was named in several of the other actions, but is not a defendant in this action. Mrs. Trawinski was not a plaintiff in the most recent action filed in this court before this action, *Trawinski v. United Technologies Carrier Corporation, et al.*, CV-02-B-2396-S.

The plaintiffs first sued these defendants in the Circuit Court of Jefferson County, Alabama, in a complaint filed on October 28, 1997, alleging state law claims of fraud and breach of contract, based on alleged defects in Carrier's heating and air conditioning system. *Trawinski v. Standard Heating & Air Conditioning Co.*, CV-97-06736-WJW. Apparently, summary judgment was entered against the plaintiffs in that case, then later set aside and the case reinstated. On November 21, 2000, the plaintiffs voluntarily dismissed their claims without prejudice.[2]

On May 29, 2001, the plaintiffs filed a complaint in this court "ask[ing] this Honorable Court to commence an independent action, in accordance with FRCP 60(b)(6) and Rule 60(b)(6) ARCP, based on the Amended Complaint of October 1997," which was the state court proceeding. *Trawinski v. Standard Heating & Air Conditioning Co.*, CV-01-N-1373-S. In that action, the plaintiffs sought "reinstatement of all four counts against all three defendants [who] were dismissed by the May 27, 1998 Summary Judgment Order." The court issued a show cause order indicating that it lacked subject matter jurisdiction because the defendants were not state actors and the federal district court has no jurisdiction to review state court decisions. In response to the show cause order, the plaintiffs attempted to raise claims under the Energy Policy and Conservation Act ("EPCA"). After considering the plaintiffs' response, the court dismissed the claims on July 3, 2001, on the grounds that it lacked subject matter jurisdiction.

On November 20, 2001, the plaintiffs filed a second action in this court alleging violations of the EPCA and an unlawful conspiracy in violation of 42 U.S.C. § 1985(3). *Trawinski v. United Technologies, et al.*, CV 01-BU-2954-S. The court dismissed the plaintiffs' claims on May 9, 2002, because they were time-barred and for lack of subject

---

[2] The plaintiffs maintain that they were left no choice but to voluntarily dismiss the state action in 2000, because Mr. Trawinski "suffered a medically diagnosed injury as a result of severe emotionally distressing 9/29/00 and 10/3/00 deposition[s] and became increasingly ill in the weeks following." Plaintiffs' Complaint, p. 7.

2

matter jurisdiction. On December 3, 2002, the Eleventh Circuit Court of Appeals affirmed the dismissal of the plaintiffs' claims.[3] *Trawinski v. United Technologies*, 313 F.3d 1295 (11th Cir. 2002).

On September 30, 2002, Mr. Trawinski filed another action in this court. *Trawinski v. United Technologies, et al.*, CV-02-B-2396-S. The allegations of that complaint arose out of a series of depositions taken by counsel for Carrier and Standard during the discovery phase of the original state court action. On November 28, 2003, the court granted the defendants' motions for summary judgment and dismissed the action. However, the appeal is still pending before the Eleventh Circuit Court of Appeals.

In the current action, the plaintiffs complain about a heating and air conditioning system, manufactured by Carrier and installed in their home from June 23, 1993 through May 6, 1994, by Standard Heating and Air Conditioning Company, which is owned by defendant Comfort Systems, U.S.A. The plaintiffs complain that the noise is excessive, that the cooling, including dehumidification, is improper, that the furnace is oversized, that in addition to creating noise and disturbance, "the oversized blower that accompanies the mismatched equipment is a source of energy loaded noise . . . is a source of damage to person and property," and that Standard provided them with "poor workmanship" when its employees were sent to start the furnace, but failed to do so, and ended up "knocking out the whole system (including the air conditioning) and leaving the premises without even telling" them. Plaintiffs' Complaint, pp. 5 - 6, 12. The plaintiffs allege that the system is defective in its "failure to reach design specifications for PROPER COOLING CAPACITY which depends on the ability of the condensing unit-cooling coil-process to extract <u>heat</u> and <u>moisture</u> from the conditioned air moving through the cooling coil, when the outdoor temperature is 95° F (a federal requirement); the defect manifests itself at outdoor

---

[3] The Eleventh Circuit noted that although the § 1985(3) claim was properly dismissed by the District Court, it was dismissed for failure to state a claim rather than want of subject matter jurisdiction. *Trawinski*, 313 F.3d at 1299.

3

temperatures well below 95° F." Plaintiffs' Complaint, pp. 12 - 13. Additionally they claim that:

> The product installed in the Trawinski's home had manufacturing and/or design defects manifested by improper cooling and dehumidification that sustains in the air conditioned dwelling unreasonably high humidity which eventually caused mold in the duct system.
> Plaintiffs aver that while by installing at the point of use the oversized furnace containing a much larger than prescribed blower producing excessive DFM - in order to cover up the manufacturing and/ or design defect of the 38TRO42 model condensing unit's air conditioning performance, defendants produced in the existing properly designed duct system (for 3½ ton heating and air conditioning) an energy loaded air turbulence that together with the mechanical noise of the oversized furnace - a sleep disturbing noise - induces into the middle house structure a continuing disturbance, slowly but surely damaging the home; an example of the damage is the damage to the staircase right below the ceiling over which the oversized furnace is installed in the attic.
> The Trawinskis are subjected to injurious continuing energy loaded sleep disturbing, health affecting noise generated by the defectively operating Carrier equipment.
> Plaintiffs paid Standard Co. through Alagasco the contractual amount of $6786, in a timely manner (shortly after the June installation, at a time chosen by Standard Co.) for installation of the heating and air conditioning system; plaintiffs have endured enormous costs since the time of contracting and installation. As part of the costs plaintiffs have suffered continuing injury in the form of monetary loss, and recently discovered that they have paid and will pay - if the equipment remains in place - excessive costs for the defective equipment's continued operation.

Plaintiffs' Complaint, pp. 13 - 14. Regarding damages, the plaintiff allege that:

> Plaintiffs have suffered an unhealthy indoor environment: after years of improper cooling and dehumidification during the cooling season, mold has set in the air delivery duct system. The mold has affected, and will continue to affect plaintiffs' health, and it is more than probable than otherwise that damage to property and health will increase in the future if the source of the damage is not remedied. Plaintiffs request past, present, and future damages for injury to health and property; property damage is compensation for replacement of air delivery ducts affected by mold.
> Because of seller's selection of the installed Carrier equipment, including installation of an oversized furnace, plaintiffs have been paying excessive energy costs for operation of the oversized furnace; plaintiffs will continue to pay these excessive energy costs if the installed equipment is not replaced. This amounts to plaintiffs having to pay for the destruction of their health and diminution of the value of their property. Plaintiffs request past, present, and future damages for these injuries and this damage. Excessive energy costs include: excessive gas for furnace operation and excessive electricity for operating the motor of the oversized blower (all seasons);

>     electricity for running the entire air conditioning system when improperly operating compressor is engaged without any effect on cooling.
>         The sleep disorder (first intermittently alleviated by medication, later and at present alleviated by nightly use of medication) was induced gradually by years of exposure to the operation of the oversized furnace blower generating disturbing energy loaded air turbulence noise, and additionally in the winter, noise from the very much oversized jet-sounding furnace burners. Plaintiffs request compensation for this health injurious damage.
>         The damage resulting from the energy loaded turbulence which induces continuing disturbance into the middle structure of the home - whenever the oversized furnace blower is running, and more so when cooling, as it produces more CFM's and hence more intense turbulence - is particularly discernible in the deterioration of the elliptical staircase (which will get much worse with time) in a two story foyer directly below the ceiling over which the oversized furnace is installed; this staircase is a marvel of design and craftsmanship and its replacement will be costly. Plaintiffs request damages for this expense.
>         Plaintiffs request past, present, and future damages for mental pain and suffering. Future damages are requested because future pain and suffering is more probable than otherwise.
>         Because this is a tort action and defendants capriciously and deliberately engaged in oppression and wantonness, plaintiffs request punitive damages. Pursuant to Alabama Code 22 6-11-20, the punitive damages requested exceed $250,000 because they are based on a pattern of intentional wrongful conduct.

Plaintiff's Complaint, pp. 16 - 17. The plaintiffs seek damages in the amount of $2,525,250.00.

On November 10, 2003, Carrier filed a motion to dismiss, accompanied by Exhibit A, which is a summary of the prior lawsuits brought by the plaintiffs against the defendants. The plaintiffs filed an objection to Carrier's motion to dismiss on December 15, 2003. On January 12, 2004, oral argument was heard on Carrier's motion to dismiss. At the conclusion of oral argument, the court requested Carrier to draft a proposed memorandum opinion setting out the positions of both Carrier and the plaintiffs, along with Carrier's argument that the case is due to be dismissed. Carrier has provided the court with the requested proposed memorandum opinion. On January 20, 2004, Comfort filed a motion to dismiss, accompanied by a copy of the complaint in *Trawinski v. United Technologies*, CV-02-B-2396-S. On February 12, 2004, Carrier filed a motion to supplement the record with a copy of the affidavit of Carrier's attorney, Robert H. Sprain, Jr., that was previously filed in *Trawinski*

*v. United Technologies*, CV-02-B-2396-S, and a copy of the complaint filed by the Trawinskis in their state action, *Trawinski v. Standard Heating & Air Conditioning Co.*, CV-97-06736-WJW. On February 27, 2004, the plaintiffs filed an objection to Carrier's motion to supplement the record. On March 1, 2004, the court overruled the plaintiffs' objections and on March 8, 2004, the court granted Carrier's motion to supplement the record. The plaintiffs filed a response to Carrier's proposed memorandum opinion on March 12, 2004.

Because copies of the plaintiffs' complaints in previous actions and Attorney Sprain's affidavit have been presented in support of these motions, the court will treat the motions to dismiss as motions for summary judgment.

## MOTIONS TO DISMISS

In their motions to dismiss, the defendants argue that the case is due to be dismissed with prejudice because it is barred by the two-year statute of limitations set forth in Alabama Code § 6-2-38(l), and because it is barred by the doctrines of res judicata and collateral estoppel. The plaintiffs respond that:

> The material facts relevant to statute of limitations in plaintiffs' case are: when injuries were discovered in relation to the time when the product was first put to use; both times are within the bounds of limitation periods. The product was first put to use on June 25, 1993 (see ¶ (11), Complaint) or alternatively, when the seller, acting on its own, completed documents and received full payment for the product in July 1993, and the suit CV-03-RRA-1528-S was filed June 24, 2003, within the 10 year period prescribed by <u>Alabama Code</u> § 6-5-502(c); plaintiff's injuries became discoverable and were discovered well within the one year period prior to bringing the AEMLD action (see ¶ (36), Amendment to Complaint). Thus the action was timely filed within the one year period prescribed by Alabama Code § 6-5-502(b).

Plaintiff's Objection to Defendant Carrier Corporation's Motion to Dismiss, pp. 1 - 2.

## SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met her burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. (*Id.*).

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

The plaintiffs' arguments are without merit. The two-year statute of limitations set forth in *Ala. Code* § 6-2-38(l) (1975) applies to actions alleging liability under the AEMLD. *See Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1188 (11th Cir. 2004);

*Mobile Infirmary v. Delchamps*, 642 So.2d 954, 957 n. 2 (Ala. 1994); *Smith v. Medtronic, Inc.*, 607 So.2d 156, 159 (Ala. 1992); *CertainTeed Corp. v. Russell*, No. 2010877, 2003 WL 21488751 at *3 (Ala. Civ. App. June 27, 2003); *Mueller Co. v. Trambeam Corp.*, 693 So.2d 1380, 1382 (Ala. Civ. App. 1997).

> The statute of limitations on a claim begins to run when the cause of action accrues. *Home Ins. Co. v. Stuart-McCorkle, Inc.*, 291 Ala. 601, 285 So.2d 468 (1973). A cause of action accrues as soon as the claimant is entitled to maintain an action, regardless of whether the full amount of the damage is apparent at the time of the first legal injury. *Smith v. Medtronic, Inc., supra*; *Garrett v. Raytheon Co.*, 368 So.2d 516, 518-19 (Ala.1979). In *Kelly v. Shropshire*, 199 Ala. 602, 604-05, 75 So. 291, 292 (1917), the rule was stated as follows:
>> If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight, and *the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done; for in such a case the subsequent increase in the damages resulting gives no new cause of action*. Nor does plaintiff's ignorance of the tort or injury, at least if there is no fraudulent concealment by defendant, postpone the running of the statute until the tort or injury is discovered. (Emphasis added.)

*Chandiwala v. Pate Const. Co.*, No. 1021940, 2004 WL 596098 at *3 (Ala. March 26, 2004).

The plaintiffs first filed a lawsuit complaining about their allegedly defective heating and air conditioning system on October 28, 1997. Clearly, at that point the plaintiffs believed they had suffered a legal injury as a result of their allegedly faulty heating and air conditioning system. Thus, the two-year limitations period began to run no later than October 28, 1997, when their first lawsuit was filed, and expired no later than 1999. The fact that the allegedly defective system continued to perform inefficiently and/or improperly until it produced the damage about which the Trawinskis now complain did not postpone the running of the statute until the date the plaintiffs allege that they discovered the new damage in late August, 2002. *See Chandiwala, Id.* Because the Trawinskis neglected to make the necessary repairs or changes to their system at the time they originally discovered the alleged defects, they cannot now attempt to recover for the subsequent damage to their house.

Because the plaintiffs' claims are barred by the two-year statute of limitations, the discussion of res judicata and collateral estoppel is pretermitted.

## CONCLUSION

The defendants' motions to dismiss, which the court has converted into motions for summary judgment, are due to be GRANTED. An appropriate order will be entered.

DONE this _7_ day of _June_, 2004.

Robert B. Propst
Senior United States District Judge

9